1  RIMON, P.C.
2  Karineh Khachatourian (SBN 202634)
   karinehk@rimonlaw.com
3  Nikolaus A. Woloszczuk (SBN 286633)
   nikolaus.woloszczuk@rimonlaw.com
4  2479 E. Bayshore Road, Suite 210
   Palo Alto, California 94303
5  Telephone: 650.461.4433
   Facsimile: 650.461.4433
6
7  Attorneys for Petitioner,
   BARRACUDA NETWORKS, INC.
8
## UNITED STATES DISTRICT COURT
9
## CENTRAL DISTRICT OF CALIFORNIA
10
11
12
13  BARRACUDA NETWORKS, INC.,          | Case No.

14          Petitioner,                 | *Optrics, Inc. v. Barracuda Networks, Inc.*, Case No. 17-cv-04977-RS Pending in the United States District Court for the Northern District of California

15      v.

16  J2 GLOBAL, INC.,                    | **BARRACUDA NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC—PURSUANT TO CIV. L.R. 37-2.4**

17          Respondent.

18

19

20                                       **Fact Discovery Cut-Off: November 1, 2019**

21                                       **Pretrial Conference: May 20, 2020**

22

23                                       **Trial Date:        June 1, 2020**

24                                       **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

25

26

27

28

**BARRACUDA NETWORKS, INC.'S NOTICE OF MOTION**

PLEASE TAKE NOTICE that Petitioner Barracuda Networks, Inc. ("Barracuda") will and hereby does move for an order compelling production of documents by j2 Global, Inc. ("j2") pursuant to a subpoena duly served on it by Barracuda.  This motion is made following a telephonic conference between counsel pursuant to Civ. L.R. 37-1 and, pursuant to Civ. L.R. 37-2.4, after j2's failure to provide its portion of a joint stipulation in a timely manner in accordance with Civ. L.R. 37-2.2.

RIMON, P.C.

Karineh Khachatourian
Nikolaus A. Woloszczuk

Dated:  July 16, 2019            By: */s/Karineh Khachatourian*
                                     Karineh Khachatourian

                                 Attorneys for Petitioner,
                                 BARRACUDA NETWORKS, INC.

# **TABLE OF CONTENTS**

**Page**

I.   j2 Refused to Provide Its Portion of Barracuda's Draft Joint Stipulation in Accordance with Civ. L.R. 37-2.2 ................................................................ 1

II.   Relevant Facts ................................................................ 3

III.   Discovery At Issue ................................................................ 6

   A.   Category 1—Requests that seek documents and communications that only j2 possesses ................................................................ 6

      1.   Legal Standard ................................................................ 7

      2.   The Documents Sought Are Highly Relevant ............................ 9

         (a)   The j2/CudaMail Transaction Lead to the Underlying Litigation ................................................................ 9

      3.   The Facts Surrounding the j2/CudaMail Transaction is Potentially Dispositive of Several Claims ................................ 11

      4.   j2 is Not a Disinterested Third Party and Has Misrepresented the j2/CudaMail Transaction ............................ 12

      5.   Relevancy of the Individual Requests ...................................... 14

   B.   The Requests are Proportional to The Needs of the Case .................... 16

   C.   Category 2 Requests ................................................................ 19

      1.   Barracuda's Position Regarding Category 2 Requests .............. 20

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Allergan, Inc. Sec. Litig.*,
   No. 14-cv-02004-DOC (KES), 2016 U.S. Dist. LEXIS 186537
   (C.D. Cal. Sep. 14, 2016) ...................................................................... 8, 18

*Blagman v. Apple Inc.*,
   No. CV 13-8496-PSG, 2014 U.S. Dist. LEXIS 195956 (C.D. Cal.
   Jan. 6, 2014) .............................................................................................. 8, 9, 19

*Calcor Space Facility, Inc., v. Superior Court*,
   53 Cal.App.4th 216 (Cal. Ct. App. 1997) ........................................... 12, 15

*Doe v. MacLeod*,
   No. 18-cv-3191, 2019 WL 2130141 (C.D. Ill. May 15, 2019) ................ 9

*Exxon Shipping Co. v. U.S. Dept of Interior*,
   34 F.3d 774 (9th Cir. 1994) ......................................................................... 8

*Garneau v. City of Seattle*,
   147 F.3d 802 (9th Cir.1998) ........................................................................ 7

*Goodman v. United States*,
   369 F.2d 166 (9th Cir. 1966) ....................................................................... 8

*Hallett v. Morgan*,
   296 F.3d 732 (9th Cir.2002) ........................................................................ 7

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
   No. 8:15-cv-00865-AG (SHK), 2018 U.S. Dist. LEXIS 177796
   (C.D. Cal. June 27, 2018) ......................................................................... 8, 19

*Optrics Inc. v. Barracuda Networks, Inc.*,
   No. 17-cv-04977-RS ......................................................................... 4, 6, 17, 21

*United States v. Mcgraw-Hill Cos.*,
   302 F.R.D. 532 (C.D. Cal. 2014) .............................................................. 17

*Wilson v. Conair Corp.*,
   No. 1:14-cv-00894-WBS-SAB, 2015 U.S. Dist. LEXIS 163098
   (E.D. Cal. Dec. 4, 2015) .............................................................................. 8

ii

## I.     j2 Refused to Provide Its Portion of Barracuda's Draft Joint Stipulation in Accordance with Civ. L.R. 37-2.2

On July 2, 2019, pursuant to Civ. L.R. 37-2, Petitioner Barracuda Networks, Inc., ("Barracuda") provided its portion of a Joint Stipulation to Respondent j2 Global, Inc. ("j2") and supporting documents and exhibits.  Dec. of Karineh Khachatourian in Supp. of Mot. to Compel ("KK Dec."), Ex. Q (July 2, 2019 email from Barracuda's counsel, Karineh Khachatourian).  Although Civ. L.R. 37-2.2 sets a seven-day deadline for the opposing party to provide its portion of the Joint Stipulation, in view of the July 4th holiday weekend, Barracuda offered j2 a two-day extension to July 11th when it served the Joint Stipulation.  *Id.*

At nearly 5:00PM, the day before the July 4th holiday weekend, j2 responded and argued that Barracuda's Joint Stipulation did not comply with Civ. L.R. 37-2 (1) because it did not include j2's responses and objections to the disputed Requests for Production ("RFPs"); and (2) because Barracuda grouped the thirteen disputed RFPs into two different categories.  *Id.*, Ex. Q (July 3, 2019 (4:58PM) email from j2's counsel, Steven Papazian).  j2 further argued that Barracuda had not satisfied the meet and confer requirement (Civ. L.R. 37-1) for RFPs 5, 9-11, 14-15, and 18.  *Id.* Finally, j2 requested an additional four-day extension to July 16, 2019 (total seven-day extension)  *Id.*

Immediately after the holiday weekend, Barracuda responded to j2's complaints, and explained (1) that Civ. L.R. 37-2 does not require the moving party to insert the opposing party's discovery responses and objections, and that even if it did, Barracuda could not decipher from j2's April 2, 2019 which objections aligned with which RFPs (*see id.*, Ex. K)[1]; and (2) that Barracuda categorized the RFPs in

---

[1] Barracuda excerpted its RFPs verbatim in compliance with Civ. L.R. 37-2.1, but could not excerpt j2's responses/objections because j2 did not provide responses/objections on a request-by-request basis, instead j2 submitted a letter that purported to object to Barracuda's RFPs, but did so in a way that Barracuda could not reasonably ascertain which objections aligned with which RFPs.  *See* KK Dec.,

1

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC.; CASE NO.

1    an attempt to streamline the analysis for the Court, and did not read the Local Rules

2    as prohibiting such treatment.  *Id.*, Ex. Q (July 8, 2019 email from Barracuda's

3    counsel, Nikolaus Woloszczuk); *see also id.*, Ex. R, Sections II, II.A., II.C (draft

4    joint stipulation).  Further, Barracuda set forth in detail the history of the parties'

5    meet and confer regarding RFPs 5, 9-11, 14-15, and 18, and explained why this

6    satisfied the meet and confer requirement of Civ. L.R. 37-1.  *Id.,* Ex. Q.[2]  Barracuda

7    requested that j2 provide any authority (rules or caselaw) that supported its

8    positions.  Finally, Barracuda offered to extend j2's deadline an additional day to

9    July 12, 2019 (total extension of three days).  *Id.*

10         j2 responded to Barracuda's email after business hours the same day, and

11   recited the same objections but failed to provide any authority (rules or caselaw) for

12   its positions.  *Id.*, Ex. Q (July 8, 2019 email from j2's counsel, Steven Papazian).

13   _____

14   Ex. K.  j2 further indicated in its emails that it intends to rely on objections and
     responses that it attempted to provide on May 31, 2019, nearly ***two-months*** after its
15   deadline under Fed. R. Civ. P. 45(d)(2(B).  *Id.*, Ex. Q (July 8, 2019 email from j2's
     counsel, Steven Papazian) ("Please include a separate section that simply sets forth
16   verbatim recitation of … the responses we gave you on May 31."); *see also id.*, Ex.
     M.  Barracuda has repeatedly brought the impropriety of j2's untimely objections to
17   j2's attention and requested that j2 provide authority supporting its attempt to rely
     upon them.  *Id.*, Ex. Q (July 9, 2018 email from Barracuda's counsel, Nikolaus
18   Woloszczuk).  But j2 has failed to provide any such authority.
19
     [2] The history of Barracuda's meet and confers with j2 to-date includes the
20   following: (1) on or around March 29, 2019, counsel for Barracuda met and
     conferred telephonically with j2's in-house counsel (*id.*, ¶ 20); (2) an email thread
21   between counsel for Barracuda and in-house counsel for j2 dated March 29-April
     26, 2019, comprised of twenty-four emails; (KK Dec., Ex. F); (3) a three-page letter
22   from in-house counsel for  j2 to Barracuda, dated April 2, 2019 (*id.*, Ex. K); (4) an
     email thread between counsel for Barracuda and outside counsel for j2 dated May
23   16-22, 2019, comprised of two emails (*id.*, Ex. L); (5) a fourteen-page letter from
     counsel for j2 to Barracuda, dated May 31, 2019 (*id.*, Ex. M); (6) on June 11, 2019,
24   counsel for Barracuda met and conferred telephonically with j2's outside counsel
     (*id.*, ¶ 21); (7) a seven-page letter from counsel for Barracuda to j2, dated June 5,
25   2019 (*id.*, Ex. G); and (8) an email thread between outside counsel for Barracuda
     and j2 dated June 22, 2019 (*id.*, Ex. P).
26
27
28

2

The parties exchanged further emails on July 9, and Barracuda offered to allow j2 to provide suggested edits to address j2's objection to the categorization of the RFPs. *Id.* (July 9, 2019 (7:06PM) email from Barracuda's counsel, Karineh Khachatourian).  Barracuda further extended j2's deadline to provide its portion of the Joint Stipulation to July 15, 2019 by noon based on j2's representation that one of its counsel who would need to review its portion was in deposition (total six-day extension).  *Id.*  However, Barracuda also put j2 on notice that it would proceed with a motion to compel without a Joint Stipulation pursuant to Civ. L.R. 37-2.4 if j2 did not provide its portion by then in part because Barracuda's lead counsel would be out on vacation and further, an application to seal records would be necessary so Barracuda needed lead time.  *Id.*  j2 never responded.. *Id.*; *see also id.*, ¶ 22.  j2's refusal to timely provide its portion is mere gamesmanship: j2 itself noted that adjusting the headings regarding the categories of RFPs was a simple fix, but then tried to parlay this minor adjustment into gaining an additional seven-day extension of its deadline beyond the two-day extension it had already benefitted from. Unfortunately, j2's position is consistent with its approach throughout the subpoena process as it has sought to stonewall and obstruct Barracuda's ability to obtain discovery at every turn.  In view of j2's improper failure to provide its portion of the Joint Stipulation in accordance with Civ. L.R. 37-2.2, Barracuda now submits this motion to compel (and supporting KK Dec.) without a Joint Stipulation pursuant to Civ. L.R. 37-2.4.[3]

## II.    Relevant Facts

Barracuda subpoenaed j2 Global, Inc. ("j2") out of necessity in order to prepare its defense against claims brought by Optrics Inc. ("Optrics") and support its

---

[3] To the extent j2 files an Opposition asserting that Barracuda failed to comply with any requirements of Civ. L.R. 37-1 or 37-2 or any other applicable rules, Barracuda reserves its right to respond in its Reply.

1  counterclaims in a case venued in the Northern District of California, captioned

2  *Optrics Inc. v. Barracuda Networks, Inc.*, No. 17-cv-04977-RS ("the underlying

3  litigation"). *See* KK Dec., Ex. T.  At base, Optrics' claims sound in trademark

4  infringement and breach of contract, and Barracuda has counterclaimed for

5  declaratory judgment of trademark ownership and breach of contract. *See* KK Dec.,

6  Ex. A.  Far from being a disinterested bystander, j2 is a central figure in the events

7  that led to the lawsuit and is refusing to produce information that could be

8  dispositive of numerous claims and defenses in the underlying litigation. *See* KK

9  Dec., Ex. B.

10      Barracuda was formed in 2003 and is a global leader in Internet security,

11  networking and storage appliances, and cloud-based services.  Optrics is a Canadian

12  IT consulting company based in Edmonton, Alberta that resells hardware and

13  software products to business customers.  In 2004, Optrics became a reseller of

14  Barracuda products and over the years entered into various reseller agreements with

15  Barracuda. *Id*., Ex. A, p. 20, ¶ 13 The parties' relationship  came to an end in the

16  Spring of 2017—precipitated by j2's November 2016 purchase of Optrics' assets

17  related to its "CudaMail" product/service. *See id*., p. 7, ¶ 70.  As will be explained in

18  more detail below for the at-issue discovery requests, what j2 purchased from

19  Optrics is at the heart of the underlying litigation.

20      In 2005, Optrics began reselling Barracuda's Spam Firewall product as an

21  Optrics' rebranded product that it called "CudaMail." *Id*., p. 20, ¶ 13  But Optrics'

22  did so subject to terms of a 2013 Reseller Agreement with Barracuda.  In the event

23  that Optrics sold or attempted to sell CudaMail, or if it ceased using and/or selling

24  CudaMail, the rights to the alleged CudaMail trademark and related domain names

25  would revert to Barracuda. *Id*., p. 21, ¶ 17.

26      In November 2016, j2 and Optrics executed an asset purchase agreement

27  ("the APA") concerning CudaMail, referred to herein as " the j2/CudaMail

28

4

Transaction." *Id.*, Ex. B.  In January 2017, j2 issued a press release announcing that it had purchased CudaMail from Optrics. *Id.*, Ex. C.  Barracuda responded by demanding that Optrics transfer to Barracuda the aforementioned alleged CudaMail trademark and domain names. *See id.*, Ex. A, p. 21, ¶ 20. When Optrics refused, Barracuda terminated its reseller agreement with Optrics. *Id.*, p. 7, ¶ 70.  At the same time, j2 affirmatively interjected itself into the parties' dispute by describing the terms of the APA and representing to Barracuda that the APA was not a sale of CudaMail. See *id.*, Ex. D.  But discovery has proven that j2's representations of the APA were false, ██████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████ *See id.*, Ex. E.  Barracuda's subpoena targets discovery to establish that Optrics either sold or attempted to sell CudaMail to j2, and that Optrics ceased using and/or selling CudaMail.  This discovery is critical to Barracuda's ability to obtain the facts necessary to support its claims and defenses.

Barracuda served its document subpoena pursuant to Fed. R. Civ. P. 45 on j2 on March 26, 2019. *Id.*, Ex. T.  Over the course of the following weeks, Barracuda and j2 exchanged emails and phone calls in an attempt to reach agreement on j2's search for and production of responsive documents.  In particular, Barracuda offered to initially narrow its requests to avoid j2's production of documents and communications that j2 believed to be in Optrics' possession—pending Optrics expected April 25, 2019 production of the same. *See* KK Dec., Ex. F.  But j2's production fell well short of this compromise, as j2 failed to produce documents that are only in its possession, and the existence of which it does not dispute. *Id.*, ¶ 18. Further, Optrics itself failed to produce numerous documents that neither it, nor j2, deny exist. *Id.*, ¶ 19.

Barracuda continued its efforts to reach a compromise with j2, and set forth

its positions in a June 5, 2019 discovery letter pursuant to Local Rule 37. *Id*, Ex. G. The parties met and conferred telephonically on June 11, 2019 (*id.*, ¶ 21), but except for Request for Production ("RFP") 8, j2 refused to search for or produce any further responsive documents, necessitating Barracuda's present motion to compel. *See id*, Ex. P.

## III.    Discovery At Issue

Barracuda seeks a motion to compel j2 to search for and produce documents and communications responsive to certain of Barracuda's Requests set forth in Barracuda's subpoena. *See id.*, Ex. T. j2's objections and responses are provided as Exhibit K. In order to streamline the discussion below, Barracuda has separated its Requests into two categories: (1) Requests that seek documents and communications that only j2 possesses; and (2) Requests that seek documents and communications that Optrics may have possessed at one time, but which it has not produced in the underlying litigation.[4]

### A.    Category 1—Requests that seek documents and communications that only j2 possesses

The following documents fall into Category 1 (*see id.*, Ex. T):

**Request No. 1:**  Produce all DOCUMENTS concerning any negotiation or transaction of any kind with OPTRICS, including but not limited to all term sheets, letters of intent, memoranda of understanding, drafts, versions, revisions, amendments, addenda, supplements, schedules, and exhibits thereto.

**Request No. 4:** Produce all DOCUMENTS and COMMUNICATIONS CONCERNING any DUE DILIGENCE YOU performed or reviewed in connection with any transaction contemplated by YOU with OPTRICS.

**Request No. 8:** Produce the PRESS RELEASE, including but not limited to

---

[4] Barracuda filed a motion to compel against Optrics that was granted. *Optrics Inc. v. Barracuda Networks, Inc.*, D.I. 87, No. 17-cv-04977-RS.

all drafts, versions, redlines, revisions, amendments, supplements and press kits and COMMUNICATIONS CONCERNING same.

**Request No. 12:** Produce all COMMUNICATIONS between YOU and any PERSON, except for COMMUNICATIONS to or from j2 GLOBAL and YOUR attorneys, that CONCERN, describe, discuss, mention, refer to, or include the term "CudaMail" from 2013 to the present.

**Request No. 13:** Produce all COMMUNICATIONS between and among any PERSONS internally at j2 GLOBAL, except for COMMUNICATIONS to or from j2 GLOBAL and YOUR attorneys, that CONCERN, describe, discuss, mention, refer to, or include the term "CudaMail".

**Request No. 17:** Produce all DOCUMENTS and COMMUNICATIONS CONCERNING any PERSON'S transition or change from "CudaMail" services to FUSEMAIL services from the effective date of any agreement between YOU and OPTRICS.

### 1. Legal Standard

Federal Rules of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.* In fact, "[r]elevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir.1998). District courts have broad discretion to determine relevancy for discovery purposes, *see Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.2002), and "[f]or good cause, the court may order discovery of any

7

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC.; CASE NO.

1  matter relevant to the subject matter involved in the action," Fed. R. Civ. P.

2  26(b)(1).  "In deciding discovery disputes, courts must be careful not to deprive the

3  party of discovery that is reasonably necessary to their case."  *Wilson v. Conair*

4  *Corp.*, No. 1:14-cv-00894-WBS-SAB, 2015 U.S. Dist. LEXIS 163098, at *6 (E.D.

5  Cal. Dec. 4, 2015) (citing *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*,

6  649 F.2d 646, 650 (9th Cir. 1980)).

7        In cases involving discovery from third parties, Rule 26 and Rule 45 of the

8  Federal Rules of Civil Procedure control.  *Exxon Shipping Co. v. U.S. Dept of*

9  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994).  Rule 26's "broad scope of discovery

10  applies to discovery sought pursuant to a subpoena under Rule 45."  *In re Allergan,*

11  *Inc. Sec. Litig.*, No. 14-cv-02004-DOC (KES), 2016 U.S. Dist. LEXIS 186537, at *6

12  (C.D. Cal. Sep. 14, 2016).   And while non-parties are entitled to "a certain extra

13  degree of protection from the burdens of discovery … they are not immune

14  therefrom.  In fact, courts have held that a 'non-party witness is subject to the same

15  scope of discovery' as a party."  *Blagman v. Apple Inc.*, No. CV 13-8496-PSG

16  (PLAx), 2014 U.S. Dist. LEXIS 195956, at *10 (C.D. Cal. Jan. 6, 2014) (citations

17  omitted).

18        In evaluating the burden to a nonparty, courts "weigh the burden imposed on

19  a subpoenaed party against the value of the information the subpoena seeks."  *In re*

20  *Allergan*, 2016 U.S. Dist. LEXIS 186537, at *6 (citing *Moon v. SCP Pool Corp.*,

21  232 F.R.D. 633, 637 (C.D. Cal. 2005).  But once the party moving to compel

22  discovery establishes that the discovery requests satisfy the relevancy requirement,

23  "ultimately, the party who resists discovery has the burden to show discovery should

24  not be allowed, and has the burden of clarifying, explaining, and supporting its

25  objections."  *Id*. at *6-7 (quotation marks and brackets omitted); *see also Goodman*

26  *v. United States*, 369 F.2d 166, 169 (9th Cir. 1966) ("burden of showing that a

27  subpoena is unreasonable and oppressive is upon the party to whom it is directed.").

28

8

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC.; CASE NO.

1   And, it is a "'heavy burden.'"  *Hsingching Hsu v. Puma Biotechnology, Inc.*, No.

2   8:15-cv-00865-AG (SHK), 2018 U.S. Dist. LEXIS 177796, at *13-14 (C.D. Cal.

3   June 27, 2018) (quotation marks and citations omitted).  And any argument by the

4   nonparty resisting discovery on the grounds that it is too "burdensome" "must be

5   based on affidavits or other evidence showing the exact nature of the burden."

6   *Blagman v. Apple Inc.*, No. CV 13-8496-PSG (PLAx), 2014 U.S. Dist. LEXIS

7   195956, at *10-11 (C.D. Cal. Jan. 6, 2014).  Additionally, if a nonparty is "not a

8   truly disinterested third party" due to its having a vested interest in the outcome of

9   the case, then the degree of burden is not entitled "as much special consideration."

10  *Doe v. MacLeod*, No. 18-cv-3191, 2019 WL 2130141 at *3 (C.D. Ill. May 15,

11  2019).

12          This Court may issue an order compelling j2's "production or inspection" of

13  relevant information and documents.  Fed. R. Civ. P. 45(d)(2)(B)(i).  Additionally,

14  this Court may hold in contempt and sanction any "person who, having been served,

15  fails without adequate excuse to obey the subpoena or an order related to it."  Fed.

16  R. Civ. P. 45(g).

17              **2.      The Documents Sought Are Highly Relevant**

18              **(a)     The j2/CudaMail Transaction Lead to the Underlying Litigation**

19          As noted above, in November 2016, j2 and Optrics executed an asset

20  purchase agreement memorializing the j2/CudaMail Transaction. KK Dec., Ex. B.

21  Barracuda was unaware of this until January 2017 when j2 issued a press release

22  announcing that it purchased CudaMail from Optrics. *Id.*, Ex. C. The j2/CudaMail

23  Transaction, the facts leading up to the signing of the asset purchase agreement, and

24  the facts surrounding execution of the asset purchase agreement, are all critical to

25  Barracuda's claims and defenses in the underlying litigation.

26          Optrics did not seek or receive Barracuda's approval before it began

27  rebranding and reselling Barracuda's Spam Firewall product as "CudaMail."

28

9

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC.; CASE NO.

1    However, Barracuda ultimately agreed to allow it, subject to conditions that were

2    memorialized in the parties' 2013 Reseller Agreement.  *Id.*, Ex. A, p. 20, ¶ 14.

3    Section 14.13 of the 2013 Reseller Agreement included a term whereby if Optrics

4    (1) sold, licensed, or even ***attempted*** to sell and/or license the alleged CudaMail

5    trademark; (2) ceased using the alleged CudaMail trademark; or (3) ceased selling

6    the CudaMail product or service, that Optrics would lose any rights it had to use the

7    alleged CudaMail trademark along with associated domain names ("CudaMail

8    URLs"). *See id.*, p. 21, ¶ 17.  Further, if such a triggering event under Section 14.13

9    occurred, Optrics would be required to take all actions necessary to transfer the

10   alleged CudaMail trademark and associated domain names to Barracuda. *Id.*

11   Thus, when Barracuda learned of j2's press release announcing that it

12   purchased CudaMail from Optrics, Barracuda promptly notified Optrics that this

13   triggered Section 14.13 and demanded that Optrics cease using the alleged

14   CudaMail mark and honor its contractual obligations regarding transfer of the

15   alleged mark and domains. *Id.*, Ex. A, p. 21, ¶ 20.  Barracuda also promptly notified

16   j2 of the ramifications of its purchase of CudaMail and insisted that j2 cease any

17   planned use of the alleged CudaMail mark and agree to not seek any related

18   trademark registrations. KK Dec., Ex. H.  In response, both Optrics ***and j2***

19   backtracked from the press release and attempted to persuade Barracuda that j2 had

20   not purchased CudaMail after all. *See id.*, Ex. D.  According to j2, the APA did not

21   effect a sale of CudaMail, but rather only effected a purchase of Optrics' lists of

22   CudaMail customers and resellers and that Optrics was "tasked with encouraging a

23   subset of its existing customer base to transition to [j2's subsidiary's] FuseMail

24   services and sign new contracts directly with EMC [the j2 subsidiary]." *Id.*, Ex. D.

25   Barracuda did not accept Optrics' and j2's self-serving characterizations of

26   the j2/CudaMail transaction—which itself sounded like a de facto sale of

27   CudaMail—and repeated its demand that Optrics cease use of the alleged CudaMail

28

trademark and transfer ownership of the alleged mark and related domains to Barracuda. *See id.*, Ex. A, p. 20, ¶ 20.  When Optrics refused, Barracuda terminated its reseller relationship with Optrics. *Id.*, p. 7, ¶ 70.  Optrics responded by suing Barracuda, bringing claims of trademark infringement, breach of contract, and interference with prospective economic advantage. *Id.*, Ex. I.  In turn, Barracuda asserts counterclaims related to Optrics' breach of Section 14.13 and is seeking declaratory relief of ownership of the CudaMail mark and domains.  *Id.*, Ex. A.

### 3. The Facts Surrounding the j2/CudaMail Transaction is Potentially Dispositive of Several Claims

The details surrounding the j2/"CudaMail Transaction" and even the negotiations surrounding it could be dispositive of several claims in the underlying case. As noted above, Optrics has no rights to the alleged CudaMail trademark if Optrics (1) sold, licensed, or even ***attempted*** to sell and/or license CudaMail to j2 via the j2 CudaMail Transaction; (2) if Optrics ceased using the alleged CudaMail trademark after the j2 CudaMail Transaction; or (3) if Optrics ceased selling the CudaMail product or service after the j2 CudaMail Transaction. *See* KK Dec., Ex. A, p. 21, ¶ 17.  If Optrics has no rights to the alleged CudaMail trademark, this could be dispositive of (1) Optrics trademark infringement claims; (2) Optrics' request for a declaratory judgment that it owns the alleged CudaMail trademark and related domains; (3) Optrics' claim for interference with prospective economic advantage regarding j2 and "actual and prospective customers and licensees," and "end users of CUDAMAIL products and services; and (4) Optrics' breach of contract claims that are based on Optrics' position that Barracuda wrongfully terminated the 2013 Reseller Agreement for Optrics' failure to transfer rights in the alleged CudaMail trademark and related domains to Barracuda. *See id.*, Ex. I.

Relatedly, if Barracuda owns the alleged CudaMail trademark and domains, this would favorably resolve Barracuda's request for declaratory relief, as well its claim for Optrics' breach of contract for failure to revert the alleged CudaMail

11

1    trademark and domains to Barracuda.  The clause in the 2013 Reseller Agreement

2    addressing reverting the alleged CudaMail trademark and domain to Barracuda

3    hinges on the intent to sell, but both Optrics and j2 claim that there was never any

4    discussion of selling CudaMail. *See id.*, Ex. D. As discussed earlier, the preliminary

5    productions have included documents that call j2's assertions into question, and

6    Barracuda has a right to get discovery from j2 on the intent to purchase CudaMail

7    for the purposes of credibility and impeachment. *Calcor Space Facility, Inc., v.*

8    *Superior Court*, 53 Cal.App.4th 216, 225 (Cal. Ct. App. 1997).  Simply put, the facts

9    surrounding the j2/CudaMail Transaction are at very center of Barracuda and

10   Optrics' dispute in the underlying litigation and are highly relevant.

### 4.    j2 is Not a Disinterested Third Party and Has Misrepresented the j2/CudaMail Transaction

13            Far from being a mere bystander, j2 has an integral role in this dispute.  It was

14   j2's CudaMail Transaction and press release which triggered Barracuda's

15   termination of its Reseller Agreement which Optrics asserts was wrongful. *See* KK

16   Dec., Ex. C.  Further, j2 affirmatively interjected itself into the Barracuda/Optrics

17   dispute through its representations to Barracuda and attempts to persuade that the

18   j2/CudaMail Transaction did not effect a sale of CudaMail. *Id.*, Ex. D.  j2 told

19   Barracuda that the press release announcing j2's purchase of CudaMail was a

20   "simple misunderstanding." *Id.*  Further j2 told Barracuda (1) that "CudaMail

21   remains a brand and division of Optrics, to operate as Optrics sees fit"; (2) that

22   "Optrics intends to continue its CudaMail brand"; and (3) that "[t]hese were key

23   deal points for Optrics, *for reasons that have now become apparent to us in your*

24   *letter.*" *Id.*

25            But discovery has established that j2's representations were knowingly false.

26   Optrics recently produced the November 2016 APA which contradicts several of

27   j2's representations. *See id.*, Ex. B.  First, the APA includes a ████████████

28   ████████████████████████████████████████████████████████████

12



Second, j2 misrepresented to Barracuda that it only understood Optrics' insistence on "key deal points" ***after*** receiving Barracuda's cease and desist letter which referenced Section 14.13 of the 2013 Reseller Agreement. *See id.*, Ex. D.

Taken together, this establishes that j2 is not a disinterested third party to the dispute. j2 has assumed an active role in misrepresenting the j2/CudaMail Transaction and APA—even as recently as April 16, 2019, j2's general counsel repeated the same falsehoods described above. *See id.*, Ex. F. j2's motivation for obfuscating the j2/CudaMail Transaction is likely financial, as the APA involved

*See id.*, Ex. B. Indeed, from at least November 2016, j2 was receiving payments for "CudaMail" services and

*See id*, Ex. B; Ex. N.

Further, according to the APA

*Id.*, Ex. B at 1.

*Id.*

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2 GLOBAL, INC.; CASE NO.

1  ██████████████████████████   Thus, for several different reasons it is plain

2  that Barracuda's requests seek highly relevant and potentially ***claim dispositive***

3  information.

4  **5.    Relevancy of the Individual Requests**

5  Request Nos. 1 and 4 seek documents and communications related to the facts

6  leading up to j2's execution of the APA.  j2 has not denied that responsive

7  documents and communications exist but has not produced any such documents or

8  communications. KK Dec., ¶ 18.  Although these requests were worded broadly,

9  during meet and confer Barracuda narrowed the requests to only seek responsive

10  documents and communications that were not shared/exchanged with Optrics. *See*

11  *id*., Ex. F.  That is, Barracuda is only seeking responsive documents and

12  communications shared/exchanged either internally at j2 or externally with third

13  parties other than Optrics.  As explained above, the information sought is highly

14  relevant and potentially claim dispositive because (1) if j2 was trying to buy

15  CudaMail, this information is relevant to Optrics' response to j2 and whether there

16  was an attempt to sell CudaMail which would trigger Section 14.13 of the Reseller

17  Agreement; (2) j2's internal and external communications about the j2/CudaMail

18  Transaction and the APA could reveal that j2 ████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ██████████████████████████ (3) j2's internal and external

21  communications about the j2/CudaMail Transaction and the APA could reveal that

22  Optrics intended to cease selling CudaMail, which would also trigger Section 14.13;

23  and (4) proof that j2 knew of Section 14.13 since 2016 would be dispositive of

24  Optrics' claim for interference with prospective economic advantage regarding its

25  relationship with j2—as Optrics bases that claim on Barracuda's disclosure of

26  Section 14.13 to j2 in a January 2017 letter. *See id*., Ex. H; *see also id.*, Ex. I, ¶ 120.

27  Request No. 8 seeks documents and communications related to j2's January

28

1   2017 press release which announced that j2 had purchased CudaMail from Optrics.

2   *See id.*, Ex. C.  Although j2 has produced some responsive documents, it has

3   admitted that it is withholding certain related communications without justifying its

4   position.  Specifically, Barracuda believes that j2 exchanged communications and/or

5   press kits or similar materials with media outlets related to dissemination of the

6   press release.  j2 has not denied this. *Id.*, ¶ 18.  The information sought is highly

7   relevant and potentially claim dispositive because if j2 was telling third parties that

8   it bought CudaMail, this would indicate that the APA did effect a sale of CudaMail,

9   ███████████████████████████████████████████ While

10  typically the burden of discovery should be placed on a party to litigation, an

11  exception may exist "where  . . . the material obtained from the party is unreliable

12  and may be subject to impeachment by material in possession of the nonparty."

13  *Calcor Space Facility, Inc., v. Superior Court*, 53 Cal.App.4th at 225. Here, these

14  documents in j2's possession will show that j2 did in fact purchase CudaMail or

15  intended to, which will erode Optrics' and J2's credibility and could be used to

16  impeach their statements made to the contrary. Barracuda is entitled to this

17  discovery.

18          Request Nos. 12 and 13 seek documents and communications related to j2's

19  discussions of CudaMail.  j2 has not denied that responsive documents and

20  communications exist but has not produced any such documents or communications.

21  *Id.*, ¶ 18.  Although these requests were worded broadly, during meet and confer

22  Barracuda narrowed the requests to only seek responsive documents and

23  communications that were not shared/exchanged with Optrics. *See id*., Ex. F.  That

24  is, Barracuda is only seeking responsive documents and communications

25  shared/exchanged either internally at j2 or externally with third parties other than

26  Optrics.  As explained above, the information sought is highly relevant and

27  potentially claim dispositive for the same reason provided for Request Nos. 1 and 4.

28

15

BARRACUDA'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTY J2
GLOBAL, INC.; CASE NO.

1    Request No. 17 seek documents and communications related to the facts of

2    ████████████████████████████████████████████████████

3    ████████████    j2 has not denied that responsive documents and communications

4    exist but has not produced any such documents or communications. *Id*., ¶ 18.  And

5    Optrics has represented that ***only*** j2 has responsive documents and communications.

6    *Id*., Ex. O, 11:24-25. Although these requests were worded broadly, during meet and

7    confer Barracuda narrowed the requests to only seek responsive documents and

8    communications that were not shared/exchanged with Optrics. *See id*., Ex. F.  That

9    is, Barracuda is only seeking responsive documents and communications

10   shared/exchanged either internally at j2 or externally with third parties other than

11   Optrics.  Barracuda is seeking these documents and communications to determine if

12   j2 was representing to customers either (1) that it was taking over the CudaMail

13   product/service; (2) that Optrics would no longer be offering the CudaMail

14   product/service; or (3) that the CudaMail product/service would no longer be

15   offered by any party.  Such information is highly relevant and potentially claim

16   dispositive as it would inform whether the j2/CudaMail Transaction triggered

17   Section 14.13 of the Reseller Agreement, as explained above.

18      **B.     The Requests are Proportional to The Needs of the Case**

19       Having established relevancy, Rule 26 requires consideration of whether the

20   discovery sought is "proportional to the needs of the case, considering the

21   importance of the issues at stake in the action, the amount in controversy, the

22   parties' relative access to relevant information, the parties' resources, the

23   importance of the discovery in resolving the issues, and whether the burden or

24   expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.

25   26(b)(1).

26       As explained above regarding relevancy, the discovery is incredibly important

27   to both the issues at stake in the action and in possibly resolving them.  The facts

28

surrounding the negotiation of the j2/CudaMail transaction and performance of the

APA, including ███████████████████████████████ may

establish that Section 14.13 of the 2013 Reseller Agreement was triggered and thus

dispose of several claims in the underlying litigation.

The amount in controversy also supports a finding that Barracuda's discovery

is proportional.  Optrics is seeking damages for "economic harm in excess of

$3,000,000." KK Dec., Ex O, ¶ 147.  In addition, Optrics is seeking treble and

punitive damages as well as attorneys' fees. *Id.*, 49:14-15.  Altogether, Optrics'

damages claim likely exceeds ten million dollars.  The dispute will also determine

ownership of the alleged CudaMail trademark, the value of which has yet to be

determined.  Finally, Barracuda brings its own claims for breach of contract and the

expenses it has incurred in seeking return of the alleged CudaMail trademark and

related domains—such expenses continue to mount and will be significant. *See id.*,

Ex. A. The amount in controversy is substantial and supports a finding of

proportionality.  Finally, the parties' relative access to the discovery also favors a

finding of proportionality as ***only*** j2 has access to the discovery that Barracuda

seeks.

The parties' resources also supports a finding of proportionality.  j2 is an

enormous company with significant resources. See *United States v. Mcgraw-*

*Hill Cos*., 302 F.R.D. 532, 536 (C.D. Cal. 2014) (finding that costs of complying

with a subpoena that might be "significant" for a smaller business can be

"insignificant" to a global institution). Publicly listed on NASDAQ, j2 is a  digital

media and cloud services conglomerate that operates a portfolio of over fifteen

distinct brands, has over 2,400 employees, and conducts business in fourteen

countries[5]. According to j2's financials for the fourth quarter of 2018, j2 achieved its

thirtieth consecutive quarterly dividend increase, and had total 2018 revenue of

---

[5] See https://www.j2global.com/company.

17

Barracuda's Notice of Motion and Motion to Compel Compliance with Subpoena to Non-Party j2 Global, Inc.; Case No.

1    $1.21 billion.[6] In Q1 2019 alone, j2 recorded $299.9 million in revenue.[7]

2       Barracuda, on the other hand, went private in 2018, and employs

3 approximately 390 employees in and around their Campbell headquarters, and

4 operates four more smaller offices in the United States. Barracuda last reported a

5 total 2017 revenue of $352.6 million.[8]  Optrics is a private Canadian company with

6 a total 2017 revenue of approximately $4.2 million.[9]  Costs that might be

7 "significant" to Barracuda or Optrics are not "significant" to j2.  j2's size and

8 resources, especially relative to Barracuda and Optrics, supports a finding of

9 proportionality.

10       Finally, because j2 is not a named party in the underlying litigation,

11 consideration must be given to its status as a nonparty at this Court must "weigh the

12 burden imposed on [j2] against the value of the information the subpoena seeks." *In*

13 *re Allergan*, 2016 U.S. Dist. LEXIS 186537, at *6 (citing *Moon v. SCP Pool Corp.*,

14 232 F.R.D. 633, 637 (C.D. Cal. 2005).  As already set forth above in detail, the

15 value of the information that Barracuda seeks is highly important—potentially claim

16 dispositive.  In contrast, j2 has not established that the relative burden to it would

17 outweigh the value of the information sought.  Discovery from Optrics has

18 confirmed that a limited number of j2 employees were involved in the j2/CudaMail

19 transaction, which was a relatively small deal for such a large company. See KK

20 Dec., Ex. J at 76-78.  Thus, the number of employee email and computer records

21 that j2 would need to search would likely be limited.  Further, the relative burden to

22 _____

23 [6] See https://www.j2global.com/company/newsroom/press-releases/j2-Global-

24 Reports-Fourth-Quarter-and-Year-End-2018-Results-and-Provides-2019-Outlook-

25 20961.

[7] See http://investor.j2global.com/file/Index?KeyFile=397838966.

26

27 [8] See https://www.prnewswire.com/news-releases/barracuda-reports-fourth-quarter-
and-fiscal-2017-results-300440403.html.

28 [9] See https://www.branham300.com/details.php?year=2018&company_ID=212.

1  j2 must be viewed in light of the fact that j2 is not a disinterested party, as explained

2  above.

3    In view of the undeniable relevancy of Baracuda's discovery requests, j2

4  faces a "'heavy burden'" to justify refusing compliance.  *Hsingching Hsu*, 2018 U.S.

5  Dist. LEXIS 177796, at *13-14 (C.D. Cal. June 27, 2018) (quotation marks and

6  citations omitted).  And any argument by j2 that compliance would be too

7  burdensome "must be based on affidavits or other evidence showing the exact nature

8  of the burden."  *Blagman v. Apple Inc.*, 2014 U.S. Dist. LEXIS 195956, at *10-11

9  (C.D. Cal. Jan. 6, 2014).

10    In summary, the discovery Barracuda seeks through its Category 1 Requests

11  are highly relevant and likely dispositive of several claims and defenses.  And each

12  of the proportionality considerations weigh in favor of finding that the requests are

13  proportional to the needs of the case.

14    **C.    Category 2 Requests**

15    The following documents fall into Category 2 (*see* KK Dec., Ex. T):

16    **Request No. 5:** Produce all DOCUMENTS provided, transmitted, or

17  otherwise sent by OPTRICS to YOU or vice-versa CONCERNING any

18  contemplated transaction.

19    **Request No. 9:** Produce all COMMUNICATIONS and DOCUMENTS

20  between YOU and OPTRICS CONCERNING any RESELLER AGREEMENT.

21    **Request No. 10:** Produce all COMMUNICATIONS and DOCUMENTS

22  between YOU and OPTRICS that CONCERN, describe, discuss, mention, refer to,

23  or include the term "CudaMail" from 2013 to the present.

24    **Request No. 11:** Produce all DOCUMENTS provided, transmitted, or

25  otherwise sent by OPTRICS to YOU that CONCERN, describe, discuss, mention,

26  refer to, or include the term "CudaMail" from 2013 to the present.

27    **Request No. 14:** Produce all COMMUNICATIONS between YOU and

28

19

1   OPTRICS that CONCERN, describe, discuss, mention, refer to, or include the term

2   BARRACUDA from 2013 to the present.

3        **Request No. 15:** Produce all DOCUMENTS provided, transmitted, or

4   otherwise sent by OPTRICS to YOU that CONCERN, describe, discuss, mention,

5   refer to, or include the term BARRACUDA from 2013 to the present.

6        **Request No. 18:** Produce all COMMUNICATIONS between YOU and

7   OPTRICS CONCERNING the ACTION from 2017 to the present.

8        **1.      Barracuda's Position Regarding Category 2 Requests**

9        Barracuda's Category 2 Requests seek documents and communications that

10  Optrics *may* have possessed at one time, but which it has not produced in the

11  underlying litigation. KK Dec., ¶ 19.  The information sought is highly relevant and

12  potentially claim dispositive for the same reasons provided for Request Nos. 1 and

13  4. The same proportionality arguments made above also apply, excepting j2's

14  argument that the requests seek information that is duplicative of discovery sought

15  from Optrics—which is addressed below.

16       j2 initially took the position that it would not search for or produce responsive

17  documents citing burden because Optrics was in possession of such documents and

18  would produce them on April 25, 2019. *See id*., Ex. F.  And j2 further agreed to

19  revisit the Category 2 Requests if Optrics did not make a full production of

20  responsive documents. *See id*., Ex. Q.  But Optrics May and July, 2019 productions

21  were far from complete.  For example, Optrics did not produce any drafts of the

22  APA or related communications—Optrics only produced the final version of the

23  APA.  *See* Request No. 5; KK Dec., Ex. B; KK Dec., ¶19.  As another example, j2

24  confirmed that it is in communication with Optrics regarding discovery, yet Optrics

25  did not produce these communications which would be responsive to Request No.

26  18. *See id*., Ex. F.  But when Barracuda raised these and other deficiencies, j2

27  reneged on its promise to search for and produce responsive documents that Optrics

28

has either failed to produce or which it no longer possess. *See id*., Ex. L; Ex. M.

j2 cannot have it both ways.  It cannot rely on its representation that the Category 2 Requests are duplicative and that Optrics will produce a full set of responsive documents and communications, but then stand on its burden/duplicative objection when Optrics fails to follow through.  To be clear, Barracuda has filed a motion to compel Optrics on similar discovery requests propounded on Optrics. *Optrics Inc. v. Barracuda Networks, Inc.*, D.I. 87, No. 17-cv-04977-RS.  However, j2 and Optrics' coordination confirm that they are in the best position to determine whether the Category 2 Requests are truly duplicative of things in Optrics' possession and which it will produce.  With respect to the Category 2 Requests, and in an effort to avoid undue burden to j2, Barracuda only seeks an order from this Court that j2 produce any responsive documents that Optrics has not.  To the extent that "de-duping" j2's production from Optrics' production presents an additional burden that j2 would rather avoid, Barracuda does not object to receiving any documents from j2 that might overlap with those received from Optrics.

Dated:  July 16, 2019                             Respectfully submitted,

                                                          RIMON, P.C.
                                                          Karineh Khachatourian
                                                          Nikolaus A. Woloszczuk


                                              By: */s/Karineh Khachatourian*
                                                          Karineh Khachatourian

                                                          Attorneys for Petitioner,
                                                          BARRACUDA NETWORKS, INC.

21